UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PAMELA SUE MASON,

    Plaintiff,

v.

CVS HEALTH d/b/a CVS PHARMACY,

    Defendant.

Case No. 2:17-cv-787
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth Preston Deavers

## OPINION AND ORDER

This matter is before the Court on Defendant Ohio CVS Stores, LLC's ("CVS") Motion for Summary Judgment. (ECF No. 24). Plaintiff has filed a Response in Opposition to Summary Judgment (ECF No. 26) and Defendant replied (ECF No. 27). For the reasons set forth herein, Defendant's Motion (ECF No. 24) is **GRANTED IN PART AND DENIED IN PART**.

### I.

Plaintiff Pamela Sue Mason ("Ms. Mason" or "Plaintiff") has filed suit alleging that Ohio CVS Stores, LLC ("CVS" or "Defendant") has violated Ohio's negligence and products liability laws. (*See generally* Compl. [ECF No. 2]). Plaintiff's claims stem from the alleged wrongful distribution of prescription medication to the Plaintiff, the facts of this case are as follows.

On July 24, 2015, an employee of CVS store number 3174, located in Newark, Ohio, filled a prescription for Amitriptyline HCL 150 mg tablets for another patient. On that same day, CVS filled several prescriptions for Plaintiff, to include: Januvia 100 mg tablets, Ropinirole HCL 1 mg tablets, and Gabapentin 600 mg tablets; a licensed pharmacist verified these prescriptions. (Homan Affidavit ¶¶ 4–5, 7) [ECF No. 24-1, Ex. A].

On July 28, 2015, an individual on behalf of the Plaintiff retrieved Plaintiff's prescription medications from CVS. (Homan Affidavit ¶6). Plaintiff submits that CVS dispensed a bottle of Amitriptyline HCL that was prescribed to another individual and was inadvertently mixed in with her prescription medications. (*See* Mason Dep. 18:3–7 [ECF No. 24-1, Ex. B]). The prescription bottle containing the Amitriptyline was appropriately marked and detailed that the medication within the bottle was 150mg Amitriptyline HCL tablets and that the prescription was for an individual other than the Plaintiff. (*See* Photographs A1–A3 [ECF No. 24-1, Ex. E]).

It was Plaintiff's practice to place her medication into a weekly pillbox that was divided into sections for each day of the week. (*See* Mason Dep. 20:21–21:14). Plaintiff would refill the pillbox whenever it was empty. (*Id.* 21:1–11). When refilling her pillbox, Plaintiff would not typically look at the labels on the prescription bottles because she knew when she was to take her medication. (*Id.* 20:21–25, 22:6–22). Plaintiff claims that she took two tablets of the Amitriptyline, believing that the tablets were part of her prescribed medication. (*See id.* 19:4–14).

On August 9, 2015, Plaintiff's niece was visiting and noticed that she was acting abnormally. (*See id.* 52:1–7, 52:14–53:3). Plaintiff was "picking at the air" and "slapping [her]self," so her niece called an ambulance, which transported Plaintiff to the Licking Memorial Hospital. (*See id.* 52:1–7, 52:17–53:3). Plaintiff was transferred from the Licking Memorial Hospital to the Ohio State Medical Center, where she stayed for three days. (*See id.* 54:14–22).

On August 3, 2017, Plaintiff commenced this lawsuit by filing a Complaint in a Licking County Court of Common Pleas asserting Ohio products liability and negligence claims against CVS. CVS removed the case to this Court on September 6, 2017. CVS has now moved for summary judgment on all of Plaintiff's claims. That motion is ripe for review.

2

## II.

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The onus of establishing that there are no genuine issue of material facts is on the movant, and the movant may establish a genuine issue of material facts by demonstrating that the non-moving party lacks evidence to support an essential element of her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). If achieved, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When ruling on a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

There is a genuine issue of material facts if the non-moving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is proper when the evidence could not lead the trier of fact to find for the non-moving party).

## III.

### A.   Products Liability Claim

CVS asserts that summary judgment in favor of Defendant as to Plaintiff's Ohio products liability claim is proper for four reasons: 1) the claim is untimely; 2) CVS is not a "supplier" under

3

Ohio law; 3) the medication allegedly provided to Plaintiff was not defective; and 4) Plaintiff's expert is not qualified, as a matter of law, to render an expert opinion on whether Plaintiff's ingestion of Amitriptyline HCL was the proximate cause of her injuries. (*See generally* Def.'s Mot. for Summ. J.). Plaintiff responds that: 1) the Complaint was filed within the applicable statute of limitations; 2) CVS fits within Ohio's definition of "supplier;" and 3) Dr. McDonnell, Pharm.D. is a qualified expert.

Under Ohio products liability law, there are four ways in which a product can be defective. *See* Ohio Rev. Code § 2307.73(A)(1). In order to succeed on a products liability claim, a plaintiff must prove that the "product in question was defective in manufacture or construction as described in section 2307.74 of the Revised Code, was defective in design or formulation as described in section 2307.75 of the Revised Code, was defective due to inadequate warning or instruction as described in section 2307.76 of the Revised Code, or was defective because it did not conform to a representation made by its manufacturer as described in section 2307.77 of the Revised Code[.]" Ohio Rev. Code § 2307.73(A)(1).

CVS argues that the record demonstrates that there is no genuine issue of material fact as to the defective nature of the Amitriptyline HCL that CVS allegedly distributed to Plaintiff. Instead, CVS asserts, Plaintiff has only produced evidence that could support a finding that she was supplied the wrong medicine, not a defective medicine. (Def.'s Mot. for Summ. J. at 13). In her responsive briefing, Plaintiff failed to address CVS's argument that the Amitriptyline HCL tablets allegedly supplied to Plaintiff by CVS were not defective. Additionally, Plaintiff neither: 1) cites to record evidence that demonstrates that the Amitriptyline HCL was defective; nor 2) indicates how the medication was defective under the Ohio Revised Code. (*See* Pl. Opp'n 7–10 [ECF No. 27]).

4

When read in a light most favorable to Plaintiff, the facts currently before the Court indicate that there is no genuine issue of material fact as to whether the Amitriptyline HCL that CVS allegedly supplied Plaintiff was defective. Plaintiff has not drawn the Court's attention to record evidence that demonstrates there remains a genuine issue of material fact on this matter. Rather, the Court's review of the evidence shows that the record is devoid of such facts.

Establishing that a product is actually defective is an essential element of a products liability claim under Ohio law. *See* Ohio Rev. Code § 2307.73(A)(1). And Defendant has met its burden of showing that no reasonable jury could find in favor of Plaintiff on this element of Plaintiff's claim. Accordingly, Defendant's Motion for Summary Judgment is granted as to Plaintiff's state-law products liability claim.

**B.      Negligence Claim**

    **1.      Statute of Limitations**

On July 28, 2015, CVS distributed to Plaintiff medication not intended or prescribed for her. On August 9, 2015, Plaintiff was hospitalized for injuries she claims arose from taking this medication. Plaintiff filed this action on August 3, 2017. CVS argues that Plaintiff's claim is time-barred because it is a medical claim that is subject to a one-year statute of limitations. Alternatively, CVS argues that even under the two-year statute of limitations, Plaintiff's negligence claim was filed six days late.

        **a.      One-Year Statute of Limitations**

Under Ohio's Medical Malpractice statute, "an action upon a medical, dental, optometric, or chiropractic claim shall be commenced within one year after the cause of action accrued." Ohio Rev. Code Ann. § 2305.113(A). In relevant part, the statute provides:

> (3) "Medical claim" means any claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee

5

or agent of a physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice registered nurse, physical therapist, physician assistant, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, and that arises out of the medical diagnosis, care, or treatment of any person. "Medical claim" includes the following:

> (a) Derivative claims for relief that arise from the medical diagnosis, care, or treatment of a person;
>
> (b) Derivative claims for relief that arise from the plan of care prepared for a resident of a home;
>
> (c) Claims that arise out of the medical diagnosis, care, or treatment of any person or claims that arise out of the plan of care prepared for a resident of a home and to which both types of claims either of the following applies:
>
>> (i) The claim results from acts or omissions in providing medical care.
>>
>> (ii) The claim results from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment.
>
> (d) Claims that arise out of the plan of care, medical diagnosis, or treatment of any person and that are brought under section 3721.17 of the Revised Code;
>
> (e) Claims that arise out of skilled nursing care or personal care services provided in a home pursuant to the plan of care, medical diagnosis, or treatment.

Ohio Rev. Code Ann. § 2305.113(E)(3).

The Ohio Supreme Court has "h[e]ld that for the purposes of the R.C. 2305.113(A) one-year statute of limitations, a medical claim under R.C. 2305.113(E)(3) is a claim that both (1) arises out of the medical diagnosis, care, or treatment of any person, and (2) is asserted against one or more of the statutorily enumerated medical providers." *Est. of Stevic v. Bio-Med. Application of Ohio, Inc.*, 121 Ohio St. 3d 488, 491 (2009).

In the instant action, CVS focuses only on the first requirement: that the claim arises out

6

of the medical diagnosis, care, or treatment of any person. However, as Plaintiff correctly points out, "[t]he Ohio Supreme Court explicitly rejected that R.C. 2305.113 applies to those who are not enumerated" in the statute and pharmacists are not enumerated in the statute. (Pl.'s Opp. at 3.) As this Court has recently explained with regard to this exact issue:

> The Ohio Supreme Court has held that this statute is "plain and unambiguous" in requiring the claim to be "asserted against one or more of the specifically enumerated medical providers" listed in § 2305.113(E)(3), as well as requiring the claim to "arise[ ] out of medical diagnosis, care, or treatment." *Estate of Stevic v. Bio-Medical Application of Ohio, Inc.*, 121 Ohio St. 3d 488, 491, 905 N.E.2d 635 (Ohio 2009). Because the "medical claim" definition is "plain and unambiguous," the Court "must give full meaning to all of the express statutory language." *Id.* And the statute "specifically lists and defines the types of claims included within its ambit." *Id.* at 490, 905 N.E.2d 635.

*Reber v. Laboratory Corp. of Am.*, 2:14-CV-2694, 2017 WL 3888351, at *2 (S.D. Ohio Sept. 6, 2017). The Court then applied this law to pharmacists, stating:

> In addition to *Stevic*, [Plaintiff] cites two Ohio trial court cases finding that § 2305.113(E)(3) *excludes pharmacists* because they are not specifically enumerated in the statute. *Moore v. Covenant Care Ohio, Inc.*, No. CI 201202706, 2013 WL 9915198, at *3, 2013 Ohio Misc. LEXIS 159, at *6 (Ohio Ct. Com. Pl. Oct. 29, 2013) ("However, the Court does not find that pharmacists are expressly included in the statute's definition of medical professionals. Accordingly, the application of R.C. 2305.113 to the present claims would, improperly expand the legislature's, [sic] intent and constitute an unsupported interpretation of the same."); *Yerkey v. Spectrum Orthopaedics, Inc.*, Ohio Ct. Pleas No. 2016-cv-00794, Doc. 70 at 22 ("The Court finds that the General Assembly went to great lengths in specifically listing the medical providers to whom the term 'medical claim' applied, and had the General Assembly intended to include claims against a pharmacist it would have done so.").

*Id.*

Acknowledging as binding the law from the Ohio Supreme Court, CVS nonetheless contends that the result this law dictates "offends notions of constitutional fairness" because it "would result in disparate application of the statute among Ohio pharmacists based on their place

7

of employment.[1]" (Def.'s Mot. for Summ. J. at 8; Def.'s Reply at 5.) Specifically, Defendant contends that "a negligence claim against a pharmacist working in a hospital would be barred if not brought within 1 year, but the same claim arising out of the same dispensing event brought against a pharmacist working in a retail store would be considered timely if brought within 2 years." (Def.'s Reply at 5.) Defendant bases its conclusion on the following proposition:

> R.C. 2305.113(E) provides that medical claims include those claims against employers or agents of a hospital, home, or residential facility. There are numerous hospital systems and nursing home facilities in Ohio that provide pharmacy services to their patients, thereby employing pharmacists that would clearly fall within the definition of R.C. 2305.113(E).
>
> Under the clear statutory language, it cannot reasonably be disputed in a claim against a pharmacist that is an "employee or agent of a . . . hospital, home, or residential facility," would be treated as a "medical claim," and therefore subject to the statutory provisions applicable to a "medical claim" including the statute of limitations.
>
> In order to find that Plaintiff's claims against CVS are not a "medical claim" in this case, the Court would have to conclude that a pharmacist employed in a retail setting should somehow be viewed differently than a pharmacist employed in a hospital setting under R.C. 2305.113(E)(3).

(Def.'s Mot. for Summ. J. at 8–9.) This Court, however, disagrees.

Contrary to CVS's position, it can, and actually has been in this case, reasonably disputed that a claim against a pharmacist is a medical claim. Where the provider is employed is of no moment under the statute's requirement that the claim arise out of the medical diagnosis, care, or treatment of any person. That is, regardless of whether the pharmacist is employed by a hospital,

---

[1] CVS does not directly challenge the constitutionality of Ohio's Malpractice Statute, and indeed could not do so at this juncture. Rule 5.1 of the Federal Rules of Civil Procedure requires that a party filing a pleading or motion "drawing into question the constitutionality of a . . . state statute," where no state agency is a party to the case, "must promptly: (1) file a notice of constitutional question stating the question and identifying the paper that raises it," and "serve the notice and paper on the . . . state attorney general[.]" Fed. R. Civ. P. 5.1(a)(1). The Attorney General may then intervene within 60 days after the notice is filed or after the court certifies the challenge, unless the court sets a later time. Fed. R. Civ. P. 5.1(c).

home, or residential facility or whether a pharmacist is employed by a pharmacy such as CVS, the claim must still arise out of the medical diagnosis, care, or treatment of a person.

As stated above, the statute requires not only that the medical provider be one enumerated in the statute, but also that the claim arises out of the medical diagnosis, care, or treatment of any person. Consequently, there is no need to treat any pharmacist differently based on where they work—indeed Defendant cites no case where this hypothetical situation occurred even though some cases have dealt with pharmacists who work in and out of hospitals, homes, or residential facilities. Thus, while it is unnecessary to this Court's determination, it appears that courts have concluded that the work of pharmacists in dispensing a prescribed medication, regardless of where they work, does not "arise out of the medical diagnosis, care, or treatment of any person."

In conclusion, the Court finds that because a pharmacist does not fall within the statutorily-enumerated categories in Ohio Revised Code § 2305.113, a claim of negligence against a pharmacist is not a "medical claim" as that term is defined under Ohio's Malpractice Statute, Ohio Revised Code § 2305.113.

### b. Two-Year Statute of Limitations

CVS posits that, "[e]ven if Plaintiff's claims are not found to be 'medical claims,' [subject to the one-year statute of limitations] her Complaint is still time-barred [under] R.C. 2305.10." (Def.'s Mot. for Summ. J. at 9.) Ohio Revised Code § 2305.10 provides that, "an action for bodily injury . . . shall be brought within two years after the cause of action accrues." Ohio Rev. Code § 2305.10(A). This Bodily Injury Statute includes a discovery rule for situations like the one *sub judice* where an individual is harmed by "a prescription drug that is prescribed or dispensed by a physician or any other person who is legally authorized to prescribe or dispense a prescription drug[, *i.e.* an "ethical drug.]" Ohio Rev. Code § 2307.71(A)(4); *see also* Ohio Rev. Code §

9

2305.10(F)(2) (referring to § 2307.71 for definition of ethical drug). Specifically, the statute's discovery rule section provides:

> (B)(1) For purposes of division (A) of this section, a cause of action for bodily injury . . . that is caused by exposure to . . . ethical drugs . . . accrues upon the date on which the plaintiff is informed by competent medical authority that the plaintiff has an injury that is related to the exposure, or upon the date on which by the exercise of reasonable diligence the plaintiff should have known that the plaintiff has an injury that is related to the exposure, whichever date occurs first.

Ohio Rev. Code § 2305.10(B)(1).

Plaintiff contends that the earliest date the statute of limitations could commence is the date she became ill from ingesting the drugs provided to her by CVS and was transported to the hospital by ambulance, which was August 9, 2015. Plaintiff maintains that this date was when she, by the exercise of reasonable diligence, should have known that her injury related to the ingestion of the drugs dispensed to her by CVS.

Contrarily, CVS submits that the latest date that the Court should consider to be the accrual date is July 28, 2015, the date on which CVS distributed the medications to Plaintiff's representative. CVS argues:

> The statute of limitation for a claim involving medical care begins to run with the happening of a cognizable event. *Flowers v. Walker*, 63 Ohio St. 3d 546, 548-49, 589 N.E.2d 1284, 1287-88 (1992). A "cognizable event" is the occurrence of facts and circumstances which lead, or should lead, the patient to investigate the existence of a claim. *Id.* Constructive knowledge of facts, rather than actual knowledge of their legal significance, is enough to start the running of the statute of limitations. *Id.*, citing *McGee v. Weinberg* (1979), 97 Cal.App.3d 798, 803-804, 159 Cal.Rptr. 86, 89-90; *Graham v. Hansen* (1982), 128 Cal.App.3d 965, 973-974, 180 Cal.Rptr. 604, 609-610. A plaintiff need not have discovered all the relevant facts necessary to file a claim in order to trigger the statute of limitations. *Allenius v. Thomas* (1989), 42 Ohio St.3d 131, 133-134, 538 N.E.2d 93, 96. Rather, the "cognizable event" itself puts Plaintiff on notice to investigate the facts and circumstances relevant to her claim and to pursue her remedies. Id.

(Def.'s Reply at 6.) CVS concludes that, "[h]ere, there can be no question that the cognizable event giving rise to Plaintiff's claims was the dispensing of medication to her on July 28, 2015 that

apparently included a bottle of prescription medication meant for another patient." *Id.* This Court, however, disagrees.

First, the Court notes that all of the cases upon which CVS relies are medical malpractice cases, which are governed by Ohio's Medical Malpractice Statute, Ohio Revised Code § 2305.113, and Plaintiff's claim is governed by Ohio's Personal Injury Statute. What impact, if any, that reliance on law under a different statute has on the Court's instant analysis however is of no moment. This is because, even under the law set out in these medical malpractice cases, an injured party must have actually been injured before the statute begins to run. That is, the case cited by CVS does not state that the cognizable event is "the occurrence of facts and circumstances which lead, or should lead, *the patient to investigate the existence of a claim*," as CVS contends. (Def.'s Reply at 6.) But rather, the case upon which CVS relies states that a "'cognizable event' is the occurrence of facts and circumstances which lead, or should lead, *the patient to believe that the physical condition or injury of which she complains* is related to a medical diagnosis, treatment, or procedure that the patient previously received." *Flowers v. Walker*, 63 Ohio St. 3d 546, 549 (1992). Consequently, even under the medical malpractice cases upon which CVS relies, a plaintiff must have a physical condition or injury before the statute commences. In the instant action, there is no dispute that Plaintiff's physical condition or injury occurred on August 9, 2015.

Second, Ohio's Bodily Injury Statute that governs Plaintiff's claim also requires the plaintiff to suffer a bodily injury. Specifically, the two-year statute of limitation is triggered on either (1) the date she was "informed by competent medical authority that [she] has an injury that is related to the exposure" to the ethical drug, or (2) "upon the date on which by the exercise of reasonable diligence [she] should have known that [she] has an injury that is related to the exposure, whichever date occurs first." Ohio Rev. Code § 2305.10(B)(1).

11

The unequivocal results under either analysis is that the earliest date the statute of limitations commenced was August 9, 2015. Therefore, Plaintiff has timely filed her personal injury negligence claim.

## 2. Plaintiff's Causation Expert

Defendant moves to exclude Plaintiff's causation expert. Federal Rules of Evidence Rules 702 and 104(a) govern the admissibility of an expert's opinion and report. *See Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589 (1993). Under Rule 702, a witness is "qualified as an expert by knowledge, skill, experience, training, or education," which is established by "the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Further, the expert's opinion must be relevant, meaning the "expert testimony must 'fit' with the issues to be resolved at trial." *Reber*, 2017 WL 3888351, at *4 (quoting *Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999)).

The Supreme Court mandates that a district court exercise its responsibility in acting as the "gatekeeper" for expert testimony. *Daubert*, 509 U.S. at 588; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). This role, however, is not intended to supplant the adversary system or the role of the jury. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 531–32 (6th Cir. 2008). Arguments regarding the weight to be given any testimony or opinions of an expert witness are properly left to the jury. *Id.* "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Daubert*, 509 U.S. at 596).

12

To determine whether expert testimony is "reliable," the Court's role, and the offering party's responsibility, "is to make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Generally, the expert's opinions must reflect "scientific knowledge . . . derived by the scientific method," representing "good science." *Daubert*, 509 U.S. at 590, 593. The test of reliability is, however, a "flexible" one. *Kumho Tire Co.*, 526 U.S. at 140.

Any doubts regarding the admissibility of an expert's testimony should be resolved in favor of admissibility. Fed. R. Evid. 702 Advisory Committee's Notes ("[A] review of the case law . . . shows that rejection of the expert testimony is the exception rather than the rule."); *Jahn v. Equine Services, PSC*, 233 F.3d 382, 388 (6th Cir. 2000) (stating that in *Daubert* "[t]he Court explained that Rule 702 displays a liberal thrust with the general approach of relaxing the traditional barriers to opinion testimony") (internal quotations omitted).

Plaintiff offers the expert report and testimony of Patrick J. McDonnell, Pharm.D., FASHP[2] to support of her contentions that the Amitriptyline HCL tablets were the proximate cause of the injuries listed in her Complaint. Dr. McDonnell is Professor of Clinical Pharmacy Practice at Temple University School of Pharmacy. He specializes in adverse drug reactions, drug induced disease, and medication safety and has practiced at the Temple University Hospital for the past 20 years. For the past 19 years he has coordinated the Adverse Drug Reaction Reporting Program at Jeanes Hospital in Philadelphia where he has analyzed and assessed over 7,500 adverse drug reaction cases. Attached to Dr. McDonnell's report is Curriculum Vitae which lists, in depth, his education, and his experience, awards, and publications in the field of pharmacology. (*See generally* McDonnell CV

---

[2] FASHP stands for fellow of the American Society of Health Systems Pharmacy. (*See* McDonnell Rep. at 1).

13

[ECF No. 24-1, Ex. C]).

Dr. McDonnell's report was produced from the facts of the case and medical records such as the other prescriptions Plaintiff takes, the dose, timing, and adverse reactions. Within his report, Dr. McDonnell references multiple articles to support the accuracy of his conclusions. These combined with his professional experience and facts of the case (Plaintiff's medication, dosages, and health), were used to form his conclusion. After describing the effects Amitriptyline has on the human body and how Amitriptyline interacts with other medications, Dr. McDonnell concluded that the Amitriptyline "was the proximate cause of [Plaintiff's] symptomology on August 9/10, 2015." (*Id.* at 4–7).

There is no dispute that, at trial, Plaintiff bears the burden of demonstrating that her injury was proximately caused by her ingestion of the medication dispensed to her by CVS. However, Defendant contends that summary judgment on behalf of CVS is proper because Plaintiff "fails to establish a prima facie case against CVS as she cannot prove that her alleged damages are causally related to CVS's alleged error." (Def.'s Mot. for Summ. J. at 13). Defendant maintains that the reason Plaintiff cannot establish her case is because she has failed to offer competent expert testimony to prove this causation, as required under Ohio law and that such competent medical evidence may only be provided by a physician. (*Id.* at 13–17). Defendant's arguments are not well taken.

CVS cites a litany of cases in support of its contention that Ohio law requires a physician expert to establish proximate causation in this case. However, the majority[3] of these cases are

---

[3] *Frost v. Cleveland Rehab. & Special Care Ctr., Inc.*, 2008-Ohio-1718 (Ohio App. Apr. 10, 2008); *Coleman v. Mullins*, No. 96 CA 2462, 1997 WL 426147 (Ohio App. July 16, 1197); *Robertson v. Mt. Carmel E. Hosp.*, 2011-Ohio-2043 (Ohio App. Apr. 28, 2011) *Marr v. Mercy Hosp.*, No. L-87-1160, 1998 WL 336923 (Ohio App. May 22, 1998); *Smith v. Laurels of Canton*, No. 2017CA00217, 2018-Ohio-2639 (Ohio App. June 18, 2018); *Keck v. Metrohealth Med. Ctr.*, No. 89526, 2008-Ohio-801 (Ohio App. Feb. 28, 2008); *Mahan v. Bethesda hosp., Inc.*, 84 Ohio App.3d 520, 617 N.E.2d 714 (Ohio App. Dec. 23, 1992).

easily distinguishable as they are medical malpractice claims which, under Ohio Evidence Rule 601(D) must be supported by the testimony of a medical doctor.[4]

Defendant's reliance on *Grigsby v. Anesthesiologists of Sw. Ohio, Inc.*, No. C-960008, 1994 WL 156572 (Ohio App. Apr. 27, 1994) and *Clodgo v. Kroger Pharm.*, No. 98AP-569, 1999 WL 165965 (Ohio App. Mar. 18, 1999), to support its contention that Ohio law requires a physician expert opinion to establish proximate causation in a personal injury action is misplaced. The *Grigbsy* Court states that a non-physician expert must demonstrate that she has the "education achievement or training indicating [that] she could testify as to the effects" that the medication in that case had on the human body. *Grigsby*, 1994 WL 156572, at *5. As the record was silent as to whether the non-physician expert held such qualifications, her testimony on proximate cause was rightfully excluded. *Id.* In *Clodgo*, the court specifically declined to "decide whether a pharmacist may be a competent medical on th[e] issue of causation," as the pharmacist expert's report in *Clodgo*, "did not provide the . . . court with any basis to conclude" that the pharmacist had the expertise to opine on causation. *Clodgo*, 1999 WL 165965, at *3.

Thus, in both *Grigsby* and *Clodgo*, the non-physician experts were excluded from rendering an opinion as to causation because the reports failed to establish that they had the necessary background qualifications to do so. Defendant submits that Dr. McDonnell likewise lacks the requisite qualifications to render an expert opinion on whether Plaintiff's injuries were proximately caused by her ingestion of Amitriptyline HCL because Dr. McDonnell notes that he "will let physician experts opine" on whether the medication caused "more permanent and

---

[4] In pertinent part, Ohio Evidence Rule 601(D) states: "A person giving expert testimony on the issue of liability in any medical claim, as defined in R.C. 2305.113, asserted in any civil action against a physician, podiatrist, or hospital arising out of the diagnosis, care, or treatment of any person by a physician or podiatrist[.]"

sustained harm." (Def.'s Mot. for Summ. J. at 17 [quoting McDonnell Rep. at 7]). This argument is not well taken for two reasons.

First, this statement is taken out of context. In the penultimate paragraph of his report, Dr. McDonnell states:

> It is my opinion that the prescription for amitriptyline 150 mg dispensed in error by CVS pharmacy on July 24, 2015, along with at least three other drug prescriptions bottles for Pamela Mason and Ms. Mason taking this drug thinking it was hers, was the proximate cause of her symptomology on August 9/10, 2015 and the cause of her admission to the emergency department and then to the intensive care unit requiring mechanical ventilation. This event due to amitriptyline ingestion per her pulmonologist, Dr. Philip Diaz, in May of 2016 was" [sic] a setback for her" in regards to her continued decline in respiratory status. I will let physician experts opine on this more permanent and sustained harm if they are involved in this review.

(McDonnell Rep. at 7). Reading Dr. McDonnell's comment cited to by CVS in context demonstrates that Dr. McDonnell—based on his knowledge, skills, and experience—concluded that Plaintiff's injuries were proximately caused by Amitriptyline ingestion. That Dr. McDonnell relegates to other medical professionals whether the ingestion of such medication continued to affect Plaintiff's pulmonary health in May 2016 does not contravene his conclusions. Plaintiff represents that a treating physician will opine on causation and injury, meaning that Dr. McDonnell will provide testimony on pharmacology. (Pl. Opp'n at 14). Second, this goes to the weight of Dr. McDonnell's testimony not to the admissibility and can appropriately be addressed through cross-examination.

Accordingly, Defendant has failed to meet its burden in demonstrating that Dr. McDonnell is unqualified to render an expert opinion in this matter. And Plaintiff has demonstrated that there remains a genuine issue of material facts on the issue of proximate causation. Therefore, Defendant's Motion for Summary Judgment on Plaintiff's negligence claim is denied.

## IV.

For the reasons stated herein, Defendant CVS's Motion for Summary Judgment (ECF No. 24) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**

5-3-2019
DATE

EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT JUDGE